Joseph v NYU Grossman Sch. of Medicine (2025 NY Slip Op 05152)

Joseph v NYU Grossman Sch. of Medicine

2025 NY Slip Op 05152

Decided on September 25, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 25, 2025

Before: Manzanet-Daniels, J.P., Kennedy, Scarpulla, Mendez, Rodriguez, JJ. 

Index No. 650521/24|Appeal No. 4320, M-2018|Case No. 2024-05712|

[*1]Dr. D'Andrea Joseph, Plaintiff-Appellant,
v
NYU Grossman School of Medicine, et al., Defendants-Respondents.

Coviello Weber & Dahill LLP, White Plains (William F. Dahill of counsel), for appellant.
Garfunkel Wild, P.C., Great Neck (Leonard M. Rosenberg of counsel), for respondents.

Order, Supreme Court, New York County (Lyle E. Frank, J.), entered September 9, 2024, which, to the extent appealed from, granted defendants' motion to dismiss the complaint pursuant to CPLR 3211(a)(2) and (7), unanimously modified, on the law, to deny the motion as to plaintiff's New York State Human Rights Law (HRL) claims arising from her demotion and termination, and otherwise affirmed, without costs.
Plaintiff alleges that her demotion from chief of trauma and acute care surgery (ACS), suspension of laparoscopic surgery privileges, restriction of robotic surgery privileges, and termination of employment at defendant NYU Grossman School of Medicine were motivated by discrimination and retaliation in violation of the HRL. To the extent those claims arise from NYU's privilege determinations, the motion court correctly determined that "whether such claims seek damages or reinstatement, it lacked subject matter jurisdiction to entertain them," as they had not yet been reviewed by the Public Health and Health Planning Council (PHC) (Eden v St. Luke's-Roosevelt Hosp. Ctr., 39 AD3d 215, 216 [1st Dept 2007], lv dismissed in part, denied in part 9 NY3d 944 [2007]; see Public Health Law § 2801-b).
However, plaintiff's claims arising from her termination are not barred by Public Health Law § 2801-b, which creates an administrative review mechanism for privilege determinations. Plaintiff alleges that she was demoted from chief of trauma and ACS in May 2023, her surgical privileges were suspended in August 2023, and she was terminated on December 4, 2023, because of text messages she had sent to a colleague in November 2023.
On one hand, with respect to plaintiff's loss of privileges claims, "before a court orders the restoration of a physician's staff privileges, the PHC [must] be[] afforded an opportunity to apply its special expertise to the issues involved" (Gelbard v Genesee Hosp., 87 NY2d 691, 696-697 [1996]). Here, this encompasses whether NYU revoked plaintiff's privileges "for a reason unrelated to 'patient care, patient welfare, the objectives of the institution or the character or competency of the applicant'" (Public Health Law § 2801-b [1]). On the other hand, plaintiff alleges she was terminated because her text messages were deemed to be "intimidating and retaliatory."
Therefore, according to the allegations in the complaint, plaintiff's termination claim is not only separated temporally from her privileges claim, but the two claims implicate different situations, facts, and evidence, with the termination claim falling outside the purview of the Public Health Law (see Gelbard, 87 NY2d at 695). The Gelbard Court noted, "[a]t the time of the enactment of section 2801-b of the Public Health Law, a physician had no common-law right to contest the denial or termination of professional privileges and, absent a contractual right to the contrary, served strictly at the hospital's pleasure. To mitigate the perceived harshness of this rule, the Legislature undertook to devise a limited avenue of recourse by which a physician could challenge a hospital's denial or termination of staff privileges. The product of this effort was section 2801-b of the Public Health Law" (Gelbard, 87 NY2d at 695 [internal citations omitted] [emphasis added]; see also id. at 698 ["the PHC is a body of medical experts dedicated to the review of complex medical care issues, including issues related to the grant or denial of hospital staff privileges"] [emphasis added]). Indeed, it was conceded at oral argument that the PHC would not address plaintiff's demotion and termination claims.
Consequently, and contrary to defendants' argument otherwise, plaintiff's termination claims as pleaded are not "intermingled with the claims barred by Public Health Law § 2801-b" (Eden, 39 AD3d at 216), given her allegations concerning the timing of plaintiff's termination compared to the suspension of her privileges, the nature of plaintiff's claims, and the separate allegations in the complaint that she was terminated because of her text messages to a colleague. Likewise, Public Health Law § 2801-b does not constitute a basis to dismiss plaintiff's demotion claims. The demotion occurred months before the suspension and restriction of her surgical privileges. Plaintiff alleges that defendants' justifications for the demotion—that complaints about plaintiff "had reached [the] administration," plaintiff had "too much stress," and the change was "consistent with the system" (internal quotation marks omitted)—were unrelated to NYU's asserted medical bases for later suspending plaintiff's privileges. Moreover, courts routinely hear HRL claims brought by physicians outside the context of privilege determinations (see e.g. Mejia v Roosevelt Is. Med. Assoc., 95 AD3d 570, 571 [1st Dept 2012], lv dismissed 20 NY3d 1045 [2013]; Melman v Montefiore Med. Ctr., 98 AD3d 107, 111-112 [1st Dept 2012]).
The motion court properly dismissed plaintiff's claim that NYU's entry about her loss of privileges in the National Practitioner Data Bank (NPDB) constituted defamation per se. Assuming that the challenged statement is actionable, plaintiff's complaint nevertheless fails to allege "knowledge of falsity" sufficient to overcome qualified immunity under the Health Care Quality Improvement Act (42 USC § 11137 [c]; see Pal v Jersey City Med. Ctr., 658 Fed Appx 68, 75 n 9 [3d Cir 2016] ["The only circumstance in which this immunity is not triggered is when (1) the report contains false information and (2) the individual or entity submitting the report knew that the information was false"]; see also O'Neill v New York Univ., 97 AD3d 199, 212-213 [1st Dept 2012]). Plaintiff's cited authority does not warrant a different result (see e.g. Gudes v Health,2023 WL 5002053 [SD Ohio, Aug. 4, 2023, No. 3:22-cv-341]; Alexander v Hackensack Meridian Health, 2020 WL 5810526 [D NJ, Sept. 30, 2020, No. 19-18287]). In Alexander v Hackensack Meridian Health, for example, the circumstances of defendant's statements to the NPDB raised a potential inference that defendant knew the statements to be "pretextual — i.e., false" (id. at *13). Specifically, the statements at issue, which were made following an "effective[] exonerat[ion]" on the matter by the hospital's internal appellate panel, were asserted pursuant to atypical procedures and without the benefit of multiple hearings outlined by applicable bylaws (see id.).
We have considered plaintiff's remaining arguments and find them unavailing.
M-2025-02018 - Joseph v NYU Grossman School of Medicine
Motion to enlarge the record, granted.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 25, 2025